# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

The National Bank,
a national banking association,

        Plaintiff,

  v.

First Premier Capital LLC,
a Minnesota limited liability company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-903 ADM/JJK

---

Matthew R. McBride, Esq., Winthrop & Weinstine, P.A.; Robert V.P. Waterman, Jr., Esq., and Wendy S. Meyer, Esq., Lane & Waterman LLP, Davenport, IA, on behalf of Plaintiff.

John Harper III, Esq., and Molly R. Hamilton, Esq., Messerli & Kramer, P.A., Minneapolis, MN, on behalf of Defendant.

---

# I.  INTRODUCTION

On June 2, 2010, the undersigned United States District Judge heard oral argument on Defendant First Premier Capital LLC's ("First Premier") Motion to Dismiss [Docket No. 7]. Defendant's Motion is **GRANTED** and the Complaint is dismissed without prejudice.

# II.  BACKGROUND[1]

First Premier originates equipment leases for equipment financing and arranges financing for equipment leases.  Compl. [Docket No. 1] ¶ 8.  In 2003, First Premier financed its first lease with Equipment Acquisition Resources, Inc. ("EAR"), purportedly a manufacturer of lappers, slicers, grinders, and other cutting machines used in the semiconductor industry.  Id.  ¶¶ 4, 9.

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).  Thus, Plaintiff at this stage in the proceedings is by law entitled to all inferences in its favor.

Sheldon Player, EAR's founder, had previously been convicted of fraud for his conduct in a purchase and lease scheme, in which fraudulent invoices were prepared and the purchase of equipment was financed by different lenders.  Id. ¶ 6.  The equipment was never actually purchased and the proceeds earmarked for equipment financing were diverted to Player and others.  Id. ¶¶ 6, 7.

Aware of Player's criminal history, First Premier provided EAR equipment lease financing but instituted safeguards including an audit of EAR's financial statements, periodic appraisals of the leased equipment, and an assignable personal guaranty from Player and others. Id. ¶ 11.  In 2005, First Premier and EAR entered into a Master Lease Agreement, and, in 2007, the two entities entered into a Lease Schedule (collectively the "Lease Agreement").  In September 2007, First Premier solicited Plaintiff The National Bank ("TNB") to purchase the Lease Agreement.  Id. ¶ 14.  First Premier provided TNB with certain documents establishing that First Premier had all rights, title, and interest in and to the lease equipment.  Id. ¶ 17.  The parties negotiated the terms of the agreement, but First Premier failed to disclose Player's criminal history.  Id. ¶¶ 21, 22.  In October 2007, First Premier entered into a Collateral Assignment of Lease Payments and Equipment with TNB (the "Assignment"), whereby First Premier sold to TNB the lease payments due under the Lease Agreement and its rights under Player's personal guaranty for $3 million.  Id. ¶¶ 18-20.

In 2008, TNB discovered Player's criminal record.  Id. ¶ 24.  EAR made payments to TNB until mid-2009.  See id. ¶ 27.  In October 2009, EAR was unable to pay its debts and sought protection in United States Bankruptcy Court for the Northern District of Illinois.  Id. ¶ 27. Unable to recover the equipment and not receiving payments under the Lease Agreement or

the Assignment, TNB filed suit against First Premier for breach of contract, unjust enrichment, promissory/equitable estoppel, breach of implied covenant of good faith and fair dealing, negligence, negligent misrepresentation, and fraudulent misrepresentation and/or fraudulent concealment.

### III.  DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Breach of Contract and Related Claims**

TNB filed this action against First Premier after EAR's bankruptcy proceedings began. First Premier moves to dismiss Count I of the Complaint, arguing that because its claims of ownership, priority, and right to recover the lease collateral are issues currently pending in EAR's bankruptcy proceeding, TNB's breach of contract claim is not yet ripe for adjudication. TNB responds that contrary to its representations, First Premier never owned the subject lease collateral and, therefore, breached the Assignment.

The ripeness doctrine is grounded in the "cases" and "controversies" requirement of Article III of the United States Constitution and in prudential considerations for declining to exercise jurisdiction. <u>Paraquad, Inc. v. St. Louis Housing Auth.</u>, 259 F.3d 956, 958 (8th Cir. 2001). The doctrine seeks to prevent the courts, through avoidance of premature adjudications, from entangling themselves in abstract disagreements. <u>Id.</u> To be ripe for decision, the harm asserted must have matured sufficiently to warrant judicial intervention. <u>Id.</u> "A claim is not ripe for adjudication if it rests upon contingent future events that may occur as anticipated, or indeed may not occur at all." <u>Texas v. United States</u>, 523 U.S. 296, 300 (quotation omitted).

The injury faced by TNB may or may not occur. If the bankruptcy court determines that First Premier does not have a valid claim of ownership of the lease collateral, then an injury may have occurred and the case will be ripe for adjudication. Despite TNB's contention that the lease collateral has been pledged to multiple lenders or is non-existent, the possibility remains that First Premier ultimately will be determined to have a valid ownership interest in the equipment.

Until it is known whether First Premier owns the equipment, the issue has not "matured enough

to warrant judicial intervention." <u>Paraquad</u>, 259 F.3d at 959.  Were the Court to rule now on

TNB's breach of contract claim, it would be issuing an impermissible advisory opinion which

has the potential to give rise to inconsistent outcomes between this Court and the bankruptcy

court.  Any decision by this Court would not terminate the uncertainty and controversy giving

rise to these proceedings.  Instead, a decision in this case would complicate the bankruptcy

proceeding.  Thus, the Court concludes that TNB's breach of contract claim is not ripe for

adjudication and should be dismissed without prejudice pending the outcome of the bankruptcy

proceeding.  <u>See Pub. Water Supply Dist. No. 8 of Clay County v. City of Kearney</u>, 401 F.3d

930 (8th Cir. 2005) (remanding and directing the district court to dismiss without prejudice on

ripeness grounds an action in which property owners' detachment suits were pending in the state

trial courts); <u>Vine Street Ltd. P'ship v. QBE Int'l Ins. Ltd.</u>, No. Civ. 03-6561, 2004 WL

2526420, *2-3 (D. Minn. Nov. 8, 2004) (deferring decision on a partial summary judgment

motion on ripeness grounds where an on-going property appraisal determined the parties'

losses); <u>Premier Pyrotechnics, Inc. v. Zambelli Fireworks Mfg. Co.</u>, No. 05-3112-CV-SFJG,

2005 WL 1307682, *3-4 (W.D. Mo. May 31, 2005) (dismissing without prejudice the plaintiff's

complaint on ripeness grounds a declaratory judgment action on the interpretation of an

employment contract where a dispute under the contract was in arbitration proceedings).

        Since the breach of contract claim is dismissed without prejudice, dismissal without

prejudice of the dependent breach of implied covenant of good faith and fair dealing is also

appropriate.  Plaintiff appears to dispute the validity or enforceability of the contract, and thus

has pleaded alternative theories of promissory estoppel and unjust enrichment.  These alternative

equitable claims should be decided in conjunction with the breach of contract claim. Therefore, these claims too are dismissed without prejudice.

## C. Negligence and Fraud Claims

With respect to TNB's negligence and fraud claims, TNB is entitled to maintain parallel actions for the same harm. In order for TNB to recover under multiple causes of action, however, it must prove separate damages. Mitchell v. Franklin Bank, S.S.B., No. Civ. 05-1320, 2005 WL 2406034, *2 (D. Minn. Sept. 29, 2005). In its Complaint, TNB specifies its damages as unpaid monies due under the Lease Agreement and/or its inability to recover the equipment. The damages are the same for each theory of relief; the damages related to TNB's negligence and fraud allegations are not separate and distinct from the alleged breach of contract damages. Indeed, the portions of TNB's negligence and fraud allegations relating to First Premier's purported misrepresentations in originating the Lease Agreement and its assertions that the Lease Agreement was valid and enforceable are inextricably intertwined with the existence and terms of the Lease Agreement. It is difficult to perceive how TNB might proceed on these allegations until a determination can be made as to whether First Premier did or did not breach the contract. Furthermore, even if portions of the negligence and fraud claims are separate from the remaining claims, dismissing the claims without prejudice solves problems associated with splitting causes of action, promotes judicial economy by preventing multiple actions on the same set of factual circumstances, and conserves the parties' resources. See F.T.C. v. Standard Oil, 449 U.S. 232 (1980) (delaying judicial review to avoid piecemeal litigation and ensure efficiency). Once a determination has been made in the bankruptcy court, the parties will be able to fully and effectively litigate this matter. Accordingly, the Complaint is dismissed without prejudice.

**IV.  CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that First Premier's Motion to Dismiss [Docket No. 7] is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 22, 2010.